UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-96-GW(DTBx) | Date | April 24, 2017 |
|---|---|---|---|
| Title | *Brian Vester, et al. v. Werner Enterprises, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Grace E. Parasmo
Yitzchak H. Lieberman

Attorneys Present for Defendants:

John Kevin Lilly

**PROCEEDINGS:** **DEFENDANTS WERNER ENTERPRISES, INC. AND DRIVERS MANAGEMENT, LLC'S MOTION TO TRANSFER VENUE [14];**

**PLAINTIFFS' MOTION TO REMAND [23];**

**SCHEDULING CONFERENCE**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court GRANTS the motion to transfer venue to the Nebraska federal district court [14] under the first-to-file rule. In light of this decision, Plaintiffs' motion to remand [23] filed to this Court is MOOT.

|  | : | 04 |
|---|---|---|
| Initials of Preparer | JG | |

<u>*Brian Vester et al. v. Werner Enterprises, Inc. et al.*</u>, Case No. 5:17-cv-00096-GW-DTB
Tentative Rulings on: (1) Defendants' Motion to Transfer (Docket No. 14), and (2) Plaintiffs' Motion to Remand (Docket No. 23)

I.  **Background**

Plaintiffs Brian Vester ("Vester") and Joel Morales ("Morales") assert various wage-and-hour claims against Defendants Werner Enterprises, Inc. and Drivers Management, LLC on behalf of a proposed class of truck drivers employed by Defendants in California. *See generally* Notice of Removal, Ex. A ("Complaint"), Docket No. 1.

Plaintiffs seek to represent the following class ("Class"): "[A]ll current and former employees of Defendants who work or worked for Defendants as truck drivers exclusively in the State of California throughout the period of December 15, 2012 through the date that the Court certifies the Class (the 'Class Period')." *Id.* ¶ 12.

Plaintiffs allege the following relevant facts:

Vester is a California resident who was employed as a truck driver by Defendants during approximately June or July 2007 through August 2013. *Id.* ¶ 10. Morales is also a California resident who began his employment with Defendants in April 2007 and is currently employed as a truck driver by Defendants. *Id.* ¶ 11.

Defendants own and operate a trucking company that transports freight throughout the United States. *Id.* ¶ 23. Their area of operation (including routes, pick-up, and drop-off locations) for some of their dedicated accounts is confined to California. *Id.* ¶ 24. Naked Juice is one such account, to which Plaintiffs were assigned. *Id.* ¶ 25. Plaintiffs, like the other truck drivers assigned to this account, transported juice between various locations in California. *Id.*

Throughout the Class Period, Defendants uniformly compensated Plaintiffs on a "cents per-mile," piece-rate basis. *Id.* ¶ 28. Defendants also provided limited supplemental pay, also earned on piece-rate basis, for example, based on miles driven or the number of stops made on a trip. *Id.* ¶ 29.

As a result of their uniform and class wide piece-rate compensation system, Defendants had a policy and practice of systematically failing to provide separate hourly pay for time spent by Plaintiffs on rest and recovery periods and performing other non-driving activities including: waiting time, cleaning or maintaining their trucks, detention time, fueling, safety inspections, moving trailers, mandatory computer-based learning, safety training, work-related paperwork, and a host of other activities that were built into their jobs. *Id.* ¶ 30.

In or about 2015, Defendants began to pay Morales a flat per diem rate in addition to his mileage pay regardless of the number of hours worked in a day. *Id.* ¶ 31. Such additional compensation is another form of piece rate pay and likewise failed to satisfy Defendants' duty to authorize and pay for rest and recovery periods separately and hourly. *Id.* (citing *Shook v. Indian River Transp. Co.*, 72 F. Supp. 3d 1119 (E.D. Cal. 2014)).

As a result of Defendants' piece-rate compensation system, Defendants intentionally and willfully failed to provided Plaintiffs with complete and accurate itemized wage statements. Complaint ¶ 32. Defendants' wage statements also omit the following information: (1) the total

1

hours of compensable rest and recovery periods; (2) the rate of compensation for those periods; (3) the gross wages paid for those rest and recovery periods during the pay period; (4) the total hours of other nonproductive time; (5) the rate of compensation for that time; and (6) the gross wages paid for that time during the pay period. *Id.* (citing Cal. Labor Code § 226.2). Plaintiffs have suffered injury as a direct result of Defendants' inaccurate and incomplete wage statements. Complaint ¶ 33. Plaintiffs cannot promptly and easily determine, from the wage statement alone, their hourly rates and wages owed for time spent on non-driving activities and for rest and recovery periods as well as premiums owed for failure to provide the requisite number of meal and rest periods. *Id.*

Plaintiffs also typically work or worked between twelve and fourteen hours per day during the Class Period. *Id.* ¶ 34.

Defendants' electronic computer systems installed into the trucks automatically remind drivers to take a break after seven and a half hours of driving time and log the driver off the system at or before the eighth hour of driving. *Id.* ¶ 36. However, despite having the ability to do so, Defendants do not attempt to schedule meal and rest breaks for Plaintiffs. *Id.*

Defendants' policy and practice was such that any breaks that were taken were not off-duty breaks, *i.e.*, breaks where Defendants relinquished control over the employees and Plaintiffs were relieved of all duties. *Id.* ¶ 37. Plaintiffs were not permitted to leave vehicles unattended for security reasons except during restroom use. *Id.* They were instructed to keep eye contact with the vehicle at all times, even while eating. *Id.* Defendants retained the right to deduct driver pay for losses to the company resulting from any failure to comply with security policies. *Id.* Therefore, given that Defendants never relinquished control and the employees were never relieved of all duties while on assignment, Plaintiffs' breaks were not "off-duty breaks." *Id.*

Defendants had a policy and practice of failing to provide Plaintiffs with off-duty meal and rest periods. *Id.* ¶ 38. Defendants also failed to pay premium wages owed for failure to provide meal and rest breaks. *Id.*

Defendants also failed to compensate Plaintiffs for all driving activities. *Id.* ¶ 39. Defendants compensated Plaintiffs based on estimated mileage of the shortest distance between two destinations in California. *Id.* As a result, Plaintiffs were routinely uncompensated for actual miles beyond the estimated miles they drove to their destinations. *Id.* In addition, Defendants frequently failed to compensate Plaintiffs for other driving activities, including time spent driving empty trailers and time spent making multiple stops (extra pick-ups and drop-offs) on the way to a destination. *Id.*

Defendants also had a policy and practice of making illegal deductions from Plaintiffs' accrued wages. *Id.* ¶ 40. Defendants deducted transaction fees directly from Plaintiffs' accrued wages to process the reimbursement for monies spent by Plaintiffs for business-related purposes. *Id.* Plaintiffs' "lumper fees" (fees for loading and unloading services) is one such example. *Id.* at ¶ 41. To process a reimbursement of this and other similar business expenses, Defendants deducted a $4 transaction fee directly from Plaintiffs' accrued wages. *Id.* Defendants did not obtain written authorization to collect such transaction fees. *Id.*

Based on the foregoing facts, on December 15, 2016, the Plaintiffs filed a class action in the Superior Court in San Bernardino County asserting the following six claims: (1) failure to pay for all time worked; (2) failure to provide meal and paid rest periods and/or pay premiums;

(3) failure to furnish complete and accurate itemized wage statements; (4) illegal wage deductions; (5) failure to pay termination wages; and (6) violation of the California Unfair Competition Law ("UCL"). *See generally id.* The matter was removed to federal Court on January 20, 2017. *See* Docket No. 1.

On January 27, 2017, Defendants filed a motion to transfer this action to the United States District Court for the District of Nebraska. *See* Defs.' Motion to Transfer Venue ("Motion"), Docket No. 14; *see also* Defs.' Request for Judicial Notice ("RJN"), Docket No. 15. On February 17, 2017, Plaintiffs filed their opposition. *See* Pls.' Opp'n to the Motion ("Opposition"), Docket No. 21. On February 27, 2017, Defendants filed their reply. *See* Defs.' Reply in Supp. of the Motion ("Reply"), Docket No. 24. Additionally, on February 17, 2017, Plaintiffs filed a motion to remand.[1] *See* Docket No. 23.

## II. Legal Standard

The first-to-file rule is "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) (quoting *Church of Scientology of Cal. v. United States Dep't of the Army*, 611 F.2d 738, 749 (9th Cir. 1979)); *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997) ("Under that rule, when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy.") (citing *Alltrade, Inc. v. Uniweld Prods., Inc*., 946 F.2d 622, 625, 628-29 (9th Cir. 1991); *Pacesetter*, 678 F.2d at 95; *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183-84 (1952)).

Although discretionary, the rule "serves the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology*, 611 F.2d at 750; *id.* ("The doctrine is designed to avoid . . . embarrassment of conflicting judgments.") (citing *Great N. Railway Co. v. Nat'l R.R. Adjustment Bd.*, 422 F.2d 1187, 1193 (7th Cir. 1970)); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("[T]here is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.") (citing *Church of Scientology*, 611 F.2d at 749); *see also Alltrade*, 946 F.2d at 625 ("The first-to-file rule was developed to 'serve[] the purpose of promoting efficiency well and should not be disregarded lightly.'") (quoting *Church of Scientology*, 611 F.2d at 750; *EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir.), *cert. granted in part*, 488 U.S. 992 (1988), *order amended*, 490 U.S. 1015 (1989), *aff'd on other grounds*, 493 U.S. 182 (1990)); *Pacesetter*, 678 F.2d at 95. A district court may decline to apply the first-to-file rule if the first-filed suit was filed in bad faith, the first-filed suit was anticipatory, or the chosen forum for the first-filed suit was the result of forum

---

[1] Plaintiffs' motion to remand is based upon their contentions that:

> the Notice of Removal fails to plausibly allege that that amount in controversy exceeds $5 million for the claims of Plaintiffs and class members. Second, the amount in controversy in cases against Defendants pending in the District of Nebraska should not be considered here because Plaintiffs have more than a colorable basis to assert their claims in state court for a group of drivers who are assigned to Defendants' California-specific trucking operations . . . .

*See* Docket No. 23 at 2. However, as discussed below, because this Court would grant the motion to transfer venue, Plaintiffs' motion to remand in this Court is moot.

3

shopping. *See Alltrade*, 946 F.2d at 627-28 (citing *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*, 130 F.2d 474, 476 (3d Cir.), *cert. denied*, 317 U.S. 681 (1942); *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983); *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 217, 219 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979); *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 424 n.4 (2d Cir.), *cert. dismissed*, 384 U.S. 948 (1965)).

In applying the first-to-file rule, district courts typically look to three factors: (1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues. *Alltrade*, 946 F.2d at 625-26. But the "sameness" requirement does not mandate that the two actions be identical, only that they be "substantially similar." *Dumas v. Major League Baseball Props., Inc.*, 52 F. Supp. 2d 1183, 1189 (S.D. Cal. May 14, 1999), *vacated on other grounds by*, 104 F. Supp. 2d 1224 (S.D. Cal. June 21, 2000), *aff'd*, 300 F.3d 1083 (9th Cir. 2002); *British Telecomms. plc v. McDonnell Douglas Corp.*, No. C-93-0677 MHP, 1993 WL 149860, at *4 (N.D. Cal. May 3, 1993); *Ward v. Follett Corp.*, 158 F.R.D. 645, 649 (N.D. Cal. 1994).

### III. Discussion

Defendants contend that this action should be transferred to the District of Nebraska under the first-to-file rule because two similar actions are currently pending in that district. *See* Motion at 9-13. The first action is *Abarca v. Werner Enterprises, Inc.* ("*Abarca*"), No. 14-319 (D. Neb. Aug. 25, 2014), and the second action is *Smith v. Werner Enterprises, Inc.* ("*Smith*"), No. 15-287 (D. Neb. June 26, 2015). *See* Motion at 1. Defendants have filed a Request for Judicial Notice ("RJN") of both *Abarca* and *Smith*, but as they have been consolidated for trial in the District of Nebraska, the Court needs to judicially notice the pleadings in only *Abarca*, the lead case (henceforth, the "Nebraska Action"), which is also sufficiently dispositive of the Motion; and therefore it does so under Federal Rule of Evidence 201. *See* RJN, Docket No. 15 at 1; *id.* ¶¶ 5; *id.*, Ex. E – the Fourth Amended Complaint in *Abarca* ("FAC"); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("[Courts] may take judicial notice of court filings and other matters of public record.") (citing *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)).

The parties agree that the Nebraska Action was filed first. *See* Opposition at 6. Plaintiffs also do not assert that any of the exceptions to the first-to-file rule applies here. *See Alltrade*, 946 F.2d at 627-28 (stating that a district court may decline to apply the first-to-file rule if the first-filed suit was filed in bad faith, the first-filed suit was anticipatory, or the chosen forum for the first-filed suit was the result of forum shopping). As such, whether this case and the Nebraska Action present substantially similar parties and issues is dispositive to the Motion. *See Dumas*, 52 F. Supp. 2d at 1189.

#### A. Similarity of the Parties

Defendants contend that all of the putative class members Plaintiffs seek to represent in this action are included within the putative class described in the operative complaint in the Nebraska Action. *See* Motion at 9-10; Reply at 2, 7-8. Plaintiffs respond first that it is "unclear whether Plaintiffs and the putative class members in this case, who are intrastate drivers, are subsumed within this class of interstate drivers." Opposition at 7. Plaintiffs rely on *Smith v. Toys "R" Us-Delaware, Inc.* ("*Smith v. Toys R Us*"), No. 1:13-CV-00254-AWI, 2013 WL 4049219, at *3 (E.D. Cal. Aug. 7, 2013) in support of their argument. *See* Opposition at 7.

4

Plaintiffs' argument is not persuasive. In *Smith v. Toys R Us*, it was "not evident from the face of the pleadings" that the proposed class in the later action was subsumed within the class defined in the earlier action. *See* 2013 WL 4049219, at *3 (contrasting two distinctly worded class definitions); *see also Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) ("In a class action, the classes, and not the class representatives, are compared.") (citing Cal. Jur. 3d Actions § 284). Not so in the Nebraska Action, where, by contrast, the "California Class" is broadly defined as "all truck drivers who, while working for Werner, picked up and/or dropped off a load in the state of California after the completion of training at any time since four years before the filing of this legal action until such time as there is a final disposition of this lawsuit" (*see* FAC ¶ 8), which *prima facie* includes the class Plaintiffs have proposed in this action.² Under the plain meaning approach, the Court construes the definition of the California Class in the Nebraska Action to include truck drivers who picked up or dropped off *at least* one load in California. Plainly included within this definition are those truck drivers who picked up or dropped off *all* of their loads in California, that is, drivers who worked exclusively in California, the class that Plaintiffs wish to represent here. A review of the allegations surrounding the named California plaintiffs in the Nebraska Action (*see* FAC ¶ 3) also compels the same conclusion – indeed, Plaintiffs do not (and cannot) differentiate themselves meaningfully from the named plaintiffs in the Nebraska Action. Any relief provided to plaintiffs in the Nebraska Action can be availed by the Plaintiffs and the class they currently seek to represent here. Plaintiffs' proposed class in this lawsuit is therefore subsumed by the expansively worded California Class in the Nebraska Action. *See Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010) (holding that the proposed classes for class actions are substantially similar where both classes seek to represent some of the same individuals and that such similarity can be assessed before class has been certified by the first court); *Schwartz v. Frito-Lay N. Am.*, No. C-12-02740 EDL, 2012 WL 8147135, at *3 (N.D. Cal. Sept. 12, 2012) (concluding that the parties were effectively the same where the putative class in the earlier filed case would include named plaintiff in the later filed case); *Pac. Coast Breaker, Inc. v. Conn. Electric, Inc.*, 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) ("The [first-to-file] rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional, unmatched parties in one or both matters.") (citations omitted); *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006); *Microchip Tech., Inc. v. United Module Corp.*, No. CV-10-04241-LHK, 2011 WL 2669627, at *3 (N.D. Cal. July 7, 2011) (transferring case under first-to-file rule despite plaintiffs' arguments that a named plaintiff and a named defendant were not parties in the first-filed action and the earlier case included far more entities); *cf. Ross*, 542 F. Supp. 2d at 1020 (finding that parties were not similar where the class certification was denied with prejudice in the earlier filed action).

Because the Court finds that the plaintiffs in the two cases are substantially similar, and the parties do not dispute that defendants in these actions are the same, "the similarity of the

---

² As delineated in paragraph 7 of the FAC, the *Abarca* action:

> was originally filed in the Superior Court in and for the County of Alameda, California. Defendant Werner Enterprises, Inc. removed this case to the U.S. District Court for the Northern District of California, which, over Plaintiffs' opposition, ordered it transferred under 28 U.S.C. § 1404(a) to the United States District Court, District of Nebraska . . . .

*See* Docket No. 15-5 at page 4 of 25.

parties" factor sufficiently weighs in favor of a transfer under the first-to-file doctrine of federal comity.

### B. Similarity of the Issues

Defendants contend next that both this action and the Nebraska Action assert California-based wage-and-hour claims for compensation, missed meal and rest breaks, and other derivative claims. *See* Motion at 10-12. Defendants explain essentially that to accurately and fully resolve the claims at issue in the Nebraska Action, the fact finder in that action will also be required to resolve all claims at issue in Plaintiffs' Complaint. Plaintiffs respond that the complex choice of law issues present in the Nebraska Action are not present here. *See* Opposition at 8-9. In particular, Plaintiffs claim that the court in the Nebraska Action would need to conduct a complex choice-of-law analysis based on a review of "how much time was spent, how many stops were made, or how many miles were driven by the class of thousands of drivers *to determine whether they are members of the class*." *Id.* at 8 (emphasis added). But it is axiomatic that in the Nebraska Action, a putative class action, the court need not look at each of the "thousands of drivers," but only their purported class representative – there are only six of them – to determine whether a class action can be maintained and whether those six plaintiffs adequately represent the interests of the members of the putative class. *See* FAC at 1 (listing the six plaintiffs in the putative class action); *id.* ¶ 3 ("All Plaintiffs are residents of California and have worked for Werner in California."). Moreover, the factual determination that Plaintiffs propose is one suited for a Federal Rule of Civil Procedure 23 motion for class certification to ascertain typicality of the claims, not to assess the similarity of the issues under the first-to-file rule.

Unlike the factual scenario presented in *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997), on which Plaintiffs rely, where the issue in the first filed *qui tam* case (whether any of the hospitals knowingly submitted false claims for payment) was held to be distinct from the issue in the later filed case (whether a 1986 Health Care Financing Administration policy, which provided that Medicare will not cover investigational medical devices that have not been approved for marketing by the Food and Drug Administration, was validly enacted), here, by contrast, a comparative review of the operative complaints show that the issues in the Nebraska Action appear to encompass each of the issues asserted by Plaintiffs in this action arising out of substantially the same fact pattern. *Compare* Complaint (alleging six wage-and-hour claims), *with* FAC (alleging *inter alia* the same six claims based on essentially the same operative facts); *see also* Motion at 11 (comparing claims in the two actions). Tellingly, Plaintiffs do not directly address this contention, except to offer legal conclusions and red-herrings. Plaintiffs argue, for example, that "[a]lthough the claims in this and the prior filed actions may be broadly similar, the composition of the classes and the factual and legal issues and circumstances underlying the class claims are not substantially similar." *See* Opposition at 9. Plaintiffs do not specify what legal issues or what specific circumstances underlying the class claims are not substantially similar. (The Court has already addressed Plaintiffs' contention regarding the "composition of the classes" above by finding that the putative class here, including Plaintiffs, are included in the putative class in the Nebraska Action.) Plaintiffs' conclusory assertion, without any factual basis, is insufficient to meaningfully oppose Defendants' specific contention that each of the claims Plaintiffs assert here is already included – and will necessarily be addressed – in the Nebraska Action. *See Schwartz*, 2012 WL 8147135, at *3 ("The issues need not be precisely identical for the first-to-file rule to apply."). Plaintiffs

similarly reference the motion to transfer in the *Russell* action, where the court refused to transfer the action to the District of Nebraska on the basis of the first-to-file rule. *See* Opposition at 9; *see also Russell v. Werner Enterprises, Inc.*, No. C 14-3839 PJH, 2014 WL 4983747, *1-3 (N.D. Cal. Oct. 6, 2014). However, it must be noted that at the time the *Russell* court did so, on October 6, 2014, no California class was defined in the actions then pending in the District of Nebraska. *See Abarca*, Docket No. 15 (moving to transfer under the first-to-file rule on the basis of *Petrone* and *Baouch* actions, neither of which involved any California state law claims); *id.*, Docket No. 18 (opposing the motion to transfer, reasoning that *Petrone* and *Baouch* did not include any California state law claims). Indeed, it was only after the *Russell* court ordered a 28 U.S.C. § 1404(a) convenience transfer of that action (*see Russell*, 2014 WL 4983747, at *2-3) that claims on behalf of a California class were first brought up in an action in the District of Nebraska – claims that are now part of the Nebraska Action – which further bolsters Defendants' argument for transfer under the first-to-file rule.

As such, the similarity of the issues factor also weighs in favor of a transfer under the first-to-file rule.

## IV. Conclusion

For the foregoing reasons, the Court grants the motion to transfer venue to the Nebraska federal district court under the first-to-file rule. In light of this decision, Plaintiffs' motion to remand filed to this Court is moot.