# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EZEQUIEL OLIVARES ABARCA, ALFREDO ALESNA, JR., DAVID CAGLE, STEPHEN L. DAVIS, FRANK EADS, and KENNETH J. SURMAN, individually and on behalf of all those similarly situated, | Case No.: 8:14-CV-319 **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** Before: Hon. Joseph F. Bataillon |
|      Plaintiffs, vs. | |
| WERNER ENTERPRISES, INC., DRIVERS MANAGEMENT, LLC, and DOES 1-100, inclusive, | |
|      Defendants. | |
| WILLIAM SMITH, on behalf of himself and all others similarly situated, and on behalf of the general public, | Case No.: 8:15-CV-287 |
|      Plaintiffs, vs. | |
| WERNER ENTERPRISES, INC., d/b/a C.L. WERNER, INC., a corporation, and DOES 1-100, inclusive, | |
|      Defendants. | |
| BRIAN VESTER and JOEL MORALES, individually and on behalf of all others similarly situated, | Case No.: 8:17-CV-145 |
|      Plaintiffs, vs. | |
| WERNER ENTERPRISES, INC., and DRIVERS MANAGEMENT, LLC; | |
|      Defendants. | |

| | |
|---|---|
| DANIEL BRYANT, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>WERNER ENTERPRISES, INC., a Nebraska corporation; DRIVERS MANAGEMENT, LLC, a Delaware corporation and DOES 1-50, inclusive,<br><br>    Defendants. | Case No.: 8:20-CV-227 |

## I.     INTRODUCTION

In their Motion for Partial Summary Judgment, Defendants Werner Enterprises, Inc. and Drivers Management, LLC (collectively, "Werner") claim that drivers agreed that they would be paid by the trip, rather than by the mile, and that Werner was therefore not required to provide separate compensation for nondriving time.  But the documents Werner cites say **nothing whatsoever** about compensation by the trip.  To the contrary, a contract that Werner required drivers to sign at orientation expressly states that drivers are paid by the mile and directly references the parties' understanding that mileage pay is compensation for miles driven.  *See* ECF No. 355-24 at 1-4.  Because the documents provided to drivers at orientation say the exact opposite of what Werner claims, Werner's Motion must be denied as to the first two issues.

### A.     California Law

California law provides special protections for piece-rate employees—that is, workers who are paid according to the number of units produced rather than the amount of time worked, like factory workers who are paid by the widget, carpet layers who are paid by the yard of carpet, or nurses who are paid by the procedure.  *See* Cal. Dep't Indus. Rels., Frequently Asked Questions, https://www.dir.ca.gov/pieceratebackpayelection/AB_1513_FAQs.htm (Aug. 2019) (citing Cal. Div. of Lab. Standards Enf't ("DLSE") Enforcement Policies & Interpretations Manual § 2.5.2).  Section 226.2 of the California Labor Code provides that, when an employer

842600.13

promises a particular rate per piece, it must separately compensate any other work the employee performs at no less than the minimum wage.  In other words, the employer cannot "borrow" from piece-rate wages to pay for time spent on other tasks.  *Oman v. Delta*, 9 Cal. 5th 762, 782 (2020).

Here, Werner promised to pay drivers by the mile.  That promise is made explicit in the "Employment Conditions" contract that Werner requires every driver to sign at orientation.  It is confirmed by the testimony of Named Plaintiffs and numerous Class Members who testified that they understood they would be paid by the mile, and that they understood that their mileage pay compensated them for miles driven.  Werner's only contrary evidence is the deposition testimony for this litigation of its own director of accounting, which contradicts itself and, in any event, does not overcome the plain language of Werner's contract with drivers.  Werner asks the Court to infer that it paid drivers a lump sum per trip rather than by the mile based on its use of direct distances instead of odometer distances to calculate mileage pay.  However, courts are to rely on the agreement between the employer and employees, not the pay formula, in determining the unit of compensation under a piece-rate system.  *Id.* at 782.  Nor does Werner's Driver Handbook— which expressly states that it is not a contract—say that drivers are paid by the trip.

Ultimately, Werner points to superficial similarities between this case and *Ayala v. U.S. Xpress Enterprises, Inc.*, 851 Fed. App'x 53 (9th Cir. 2021) (such as the fact that some of the same counsel are involved, as if to suggest that Plaintiffs' case should be prejudiced by their choice of legal representation).  On those grounds, Werner urges the Court to forego any contract interpretation and grant summary judgment in its favor.  But Werner has offered no evidence whatsoever, let alone met its burden of showing there is no genuine dispute, that its drivers agreed to be paid by the trip rather than by the mile.

Finally, Plaintiffs clarify that, even if the Court ruled as a matter of law that drivers were paid by the trip, Plaintiffs would have remaining claims under the California wage laws, such as that: (1) Werner failed to compensate categories of work time that it considered off duty and therefore were not included in the "trip-based" pay; (2) some trips or portions of trips (such as driving empty trailers and making multiple stops or extra pickups and drop-offs) were completed

3

but never compensated; and (3) drivers' mileage and supplemental pay sometimes fell below minimum wage when averaged out over all the time spent working during a pay period.

**B.      Nebraska Law**

Nebraska law mirrors California law in relevant respects.  Although there is no analog to section 226.2 of the California Labor Code that specifically addresses piece-rate pay, two statutes taken together achieve the same effect: (1) the Nebraska Wage and Hour Act ("NWHA") requires compensation at no less than the minimum wage for all hours worked, analyzed on an hour-by-hour basis; and (2) the Nebraska Wage Payment and Collection Act ("NWPCA") protects workers' right to receive the amount of compensation promised to them under a contract.  This means that, in the piece-rate context, an employer is prohibited from borrowing from wages promised for piece-rate work to compensate other tasks for which the workers would otherwise receive less than the minimum wage.

In its Motion, Werner misunderstands Plaintiffs' legal theory under the NWPCA. Plaintiffs do not contend that Werner promised them separate pay for nondriving time, but that Werner promised to pay them a certain rate per mile for driving.  By borrowing from these promised wages to cover nondriving tasks, Werner failed to honor its commitment and violated the NWPCA.

Regarding the final issue, Plaintiffs will not pursue a claim for inadequate wage statements under the NWPCA.

## II.      STATEMENT OF DISPUTES OF FACT

Plaintiffs respond as follows to Werner's Statement of Undisputed Material Facts (ECF No. 354 at 4-9):

1.      Undisputed.

2.      Undisputed.

3.      Disputed.  Werner's only support for this statement is deposition testimony made for this litigation by Werner's director of accounting, which contradicts itself: elsewhere, the

same witness testified that, if the Named Plaintiffs "were qualified drivers, they were paid on a per mile basis." Tisinger Dep. at 126:3-126:9, attached hereto as Exhibit A to the Declaration of Raymond Wendell in Opposition to Defendants' Motion for Partial Summary Judgment ("Wendell Decl."). In prior litigation, Mr. Tisinger verified under oath on Werner's behalf an interrogatory response stating without qualification that "[q]ualified drivers are paid by the mile." Wendell Decl. Ex. B at 9. None of the documents provided to drivers at the time of hire state that they are paid by the trip or by the load. To the contrary, one of the form contracts that Werner requires drivers to sign at orientation explicitly states that drivers are paid by the mile. *See* ECF No. 355-24 at 2 ("I understand that **when I am paid by the mile**, I will be paid by point-to-point mileage …. I understand I will not receive compensation for miles I drive to return [Driver Management's] equipment, other than those traveled while I am carrying freight.") (emphasis added). Undisputed that, in addition to mileage-based pay for driving, Werner paid certain forms of supplemental and discretionary pay, which covered some but not all nondriving work.

4.      Disputed. Werner's characterization of its compensation system as "trip pay" is at odds with the agreement it requires drivers to sign that explicitly states they are paid by the mile. *Id.* Undisputed that compensation is calculated based on direct mileage figures rather than odometer miles.

5.      Plaintiffs object that paragraph 5 of Werner's Statement is not material to Werner's Motion. D. Neb. Civ. R. 56.1(a)(2) ("A fact is 'material' if pertinent to the outcome of the issues identified in the summary judgment motion."). The statement is irrelevant because it does not matter how Werner set mileage rates. *See, e.g.*, *Armenta v. Osmose*, 135 Cal. App. 4th 314, 321-23 (2006) (in ruling that employers must pay separately for nonproductive time, rejecting defendant's argument that pay rates were negotiated under collective bargaining agreement with the intention of including compensation for nonproductive time).

6.      Disputed. Even if Werner could have met its minimum wage obligations by averaging drivers' mileage pay over all of the time drivers spent "working" within the definition

5

of either California or Nebraska law, drivers' wages would have often fallen below the minimum wage. *See* Wendell Decl. ¶¶ 4-5, Exs. C-D. In addition, Plaintiffs object that paragraph 5 of Werner's Statement is not material to Werner's Motion, because it does not matter how Werner set mileage rates. *See, e.g., Armenta*, 135 Cal. App. 4th at 321-23.

7.      Disputed. Werner blatantly mischaracterizes the document it quotes, which contains no reference to pay by the trip or by the load, but instead explicitly references the parties' understanding that drivers are paid by the mile. It promises drivers that, **when they are paid by the mile**, they will be paid by point-to-point mileage. ECF No. 355-24 at 2. If that provision were not clear enough to establish a right to be paid by the mile, the document further states: "I understand I will not receive compensation for miles I drive to return [Driver Management's] equipment, other than those traveled while I am carrying freight." *Id.* This language indicates that drivers are *compensated for miles driven* while carrying freight, rather than for completing a trip or delivering a load. Undisputed that all drivers signed the "Employment Conditions" document during orientation.

8.      Undisputed. However, each version of the Driver Handbook expressly states that it is not a contract. ECF Nos. 354 at 20, 355-13 at 2, 355-14 at 2, 355-15 at 2, 355-16 at 2, 355-17 at 2, 355-18 at 2, 355-19 at 2, 355-20 at 2, 355-21 at 2, 355-22 at 2, 355-23 at 2.

9.      Disputed. Again, Werner misrepresents the document it quotes. The Driver Handbook contains no reference to trip pay, load pay, or compensation by the trip or by the load.

10.     Disputed. The Driver Handbook contains no reference to trip pay, load pay, or compensation by the trip or by the load. The quoted passage merely explains how mileage pay is calculated.

11.     Disputed. First, Plaintiffs object that Werner's evidence is inadmissible under the best evidence rule because it seeks to prove the contents of a document (the load assignments that drivers received in writing over their Qualcomm device) via Class Member testimony instead of the document itself. *See* Fed. R. Evid. 1002. In addition, drivers could not determine the total compensation they would earn for completing a trip based on the load assignment.

What Werner refers to as "trip pay" includes both mileage pay and supplemental pay accrued over the course of a trip. *See* ECF No. 354 at 6 ¶ 9. Drivers cannot calculate the supplemental component of "trip pay" just by knowing the direct distance they will travel to complete the trip. Moreover, drivers did not "accept" load assignments; they were forbidden from declining a load assignment. *See* ECF No. 355-10 at 1-7 (in document entitled "AGREEMENT" signed by every driver at orientation: "I understand that drivers are required to accept all loads assigned in the 48 contiguous United States and Canada as long as they have sufficient time to safely complete the delivery within the hours of service regulations"). Paragraph 11 of Werner's Statement is therefore immaterial to Werner's Motion, because a contract for compensation can only be formed or modified by mutual, voluntary assent. *See, e.g.*, *Oman*, 9 Cal. 5th at 782 (the nature of a compensation agreement hinges on the "mutual intent of the parties as it existed at the time of contracting") (quoting Cal. Civ. Code § 1636).

12.    Plaintiffs object that paragraph 12 of Werner's Statement is not material to Werner's Motion. D. Neb. Civ. R. 56.1(a)(2) ("A fact is 'material' if pertinent to the outcome of the issues identified in the summary judgment motion."). The statement is irrelevant because, under both California and Nebraska law, where employees are paid at a particular rate for a subset of work time, the employer must separately compensate other work at no less than the minimum wage, regardless whether it has promised to do so. *See Oman*, 9 Cal. 5th at 781; *Petrone v. Werner Enters., Inc.*, 121 F. Supp. 3d 860, 872 (D. Neb 2015) (claims under the NWHA are analyzed "on a hour-by-hour basis"). Plaintiffs further object that paragraph 12 of Werner's Statement is a legal conclusion. *See* D. Neb. Civ. R. 56.1(a)(2) ("The statement must not contain legal conclusions.").

13.    Disputed. Plaintiffs testified that they understood that they were paid by the mile, and that their mileage pay compensated them for miles driven. Plaintiff Cagle, for example, testified: "[W]e get paid for miles that Werner says we drove from location to location, and ... we are not paid for all the time that we work that we aren't driving." Cagle Dep. at 117:3-6 (Wendell Decl. Ex. E); *see also* Surman Dep. at 90:5-10 (Wendell Decl. Ex. F) (testifying to his

7

understanding that mileage pay compensates "[f]or the miles that you travel"); Davis Dep. at
18:8-10 (Wendell Decl. Ex. G) ("[W]hen the wheels aren't turning I was not making any money
because I was paid by the mile."); Alesna Dep. at 45:21-22 (Wendell Decl. Ex. H) ("If the
wheels is not turning, you're not making money."); Vester Dep. at 45:14-17, 46:6-11, 46:22-
47:15 (Wendell Decl. Ex. I) (testifying that he was paid by the mile throughout his employment
with Werner and that, from the start of his employment, he understood he would be paid by the
mile); Eads Dep. at 12:6 (Wendell Decl. Ex. J) (Werner pays by the mile).  Werner takes
Plaintiff Abarca's testimony out of context: in the cited portion of the deposition, Mr. Abarca
was being asked about his understanding of his wage statement.  He merely testified that the
section of the statement labeled "Trip Detail" breaks his wages down by the trip.  Abarca Dep. at
94:18-20 (Wendell Decl. Ex. K).  He was not being asked or testifying about his understanding
of the compensation agreement.  Werner also mischaracterizes Gary Dawson's testimony, which
says nothing about being compensated by the trip or by the load.  In fact, Gary Dawson clearly
testified that, when he began his employment with Werner, his understanding was that he would
be paid by the mile.  Dawson Dep. at 32:23-33:1 (ECF No. 355-4 at 3) ("Q: On both occasions
when you started driving for Werner, did you understand that you were going to be paid by the
mile? A: Yes.").

     14.     Disputed.  First, Plaintiffs object that paragraph 14 of Werner's Statement is a
legal conclusion.  *See* D. Neb. Civ. R. 56.1(a)(2) ("The statement must not contain legal
conclusions.").  Werner also mischaracterizes Plaintiffs' allegations.  The interrogatory asked
Plaintiffs to identify work duties performed during unpaid work time, and the duties listed
therein were performed during such times.  Plaintiffs allege that they were not paid minimum
wage for performing such activities, both because nondriving work was generally unpaid, and
because, even if the minimum wage laws were interpreted in the manner most favorable to
Werner, its driver pay still often fell below minimum wage.  *See* Wendell Decl. ¶¶ 4-5  & Exs.
C-D.

     15.     Undisputed.

16.     Plaintiffs object that paragraph 16 of Werner's Statement is not material to Werner's Motion.  D. Neb. Civ. R. 56.1(a)(2) ("A fact is 'material' if pertinent to the outcome of the issues identified in the summary judgment motion.").  The statement is irrelevant because, under both California and Nebraska law, where employees are paid at a particular rate for a subset of work time, the employer must separately compensate other work at no less than the minimum wage, regardless whether it has promised to do so.  *See Oman*, 9 Cal. 5th at 781; *Petrone*, 121 F. Supp. 3d at 872.

### III.     RELEVANT BACKGROUND

Werner's driver compensation consists of three main components: (1) mileage pay; (2) categories of supplemental pay that do not correspond with nondriving tasks, like bonuses; and (3) categories of supplemental pay that correspond with specific nondriving tasks.  For example, Werner offers drivers supplemental pay loading or unloading a trailer, or assisting with loading or unloading.  *See* Wendell Decl. Ex. L (2021 Driver Handbook) at WRN-RUSSELL00073207-08.  As Werner has sworn under penalty of perjury to the United States Securities and Exchange Commission:

> Most of our professional drivers are compensated on a per-mile basis.  For most company-employed drivers, the rate per mile generally increases with the drivers' length of service.  Professional drivers may earn additional compensation through incentive performance pay programs and for performing additional work associated with their job (such as loading and unloading freight and making extra stops and shorter mileage trips).

Wendell Decl. Ex. M at 3.  In each of its pleadings in this case, Werner admitted that "qualified drivers are paid varying rates per mile" and said nothing about trip-based pay.  ECF No. 41 ¶ 15; ECF No. 53 ¶ 16; ECF No. 87 ¶ 12; ECF No. 161 ¶ 12.  Courts have observed that Werner pays drivers by the mile.  *See, e.g.*, Mem. & Order at 19, *Baouch v. Werner Enters., Inc.,*, No. 8:12-cv-00408-LSC-FG3 (D. Neb. Mar. 23, 2017), ECF No. 391 (attached as Ex. 1 to Pls.' App. of Authorities ("Pls.' App."), filed herewith) ("There is no material dispute that drivers were paid by the mile, at varying mileage rates."); Findings & Recommendation at 2, *Marion v. Werner*

*Enters., Inc.*, No. 8:08-cv-00466-JFB-TDT (D. Neb. Sept. 9, 2009), ECF No. 59 ("Marion F &
R") (Pls.' App. Ex. 2) ("Drivers are paid per mile driven based on the miles calculated by the
MileMaker system rather than on actual odometer readings.").

The contracts that Werner requires drivers to sign as a condition of employment reflect a
promise to pay drivers by the mile as compensation for miles driven.  Each version of the
"Employment Conditions" document states: "I understand that when I am paid by the mile, I will
be paid by point-to-point mileage"; and "I understand I will not receive compensation for miles I
drive to return [Driver Management's] equipment, other than those traveled while I am carrying
freight."  ECF No. 355-24 at 1-4.

Plaintiffs originally filed suit on August 25, 2014 and filed the operative complaint on
January 6, 2017.  ECF No. 160.  They allege that Werner's policy and practice of paying drivers
by the mile, plus certain categories of supplemental compensation that cover some but not all of
drivers' nondriving work, violate both California and Nebraska law (among other wage-and-hour
violations that are not at issue here).  That is because both California and Nebraska law
guarantee at least the minimum wage for all work time, analyzed hour-by-hour, and forbid
employers from borrowing from contractually agreed-upon wages to cover otherwise
undercompensated work.  On March 20, 2018, the District Court adopted the Magistrate Judge's
recommendation to certify two classes: (1) the California Class, consisting of all drivers who
both resided and worked in California during the class period, who seek recovery under
California wage-and-hour law only for work performed in California; and (2) the Nebraska
Class, consisting of all drivers during the class period, and seeking recovery under Nebraska
wage and hour law based on the Nebraska choice-of-law provisions in Werner's hire contracts.
ECF Nos. 190, 186 at 6, 22, 25.

## IV.    DISCUSSION

Werner claims that drivers agreed to be paid by the trip, but the contracts it required
drivers to sign at orientation say the opposite: that drivers are paid by the mile.  That Werner

explained it would compute mileage pay using direct rather than odometer distances does not establish that it compensated drivers by the trip: courts are to identify the unit of production being compensated under a piece-rate pay scheme by reference to the language of the contract, not the formula used to calculate pay.  Even if the language of the contract were ambiguous, extrinsic evidence such as driver testimony demonstrates that drivers were paid by the mile and that their mileage pay compensated them for miles driven, raising at least a genuine dispute of fact as to the unit Werner promised to pay for.  Accordingly, under California law, Werner violated section 226.2 of the California Labor Code by failing to provide separate compensation for nondriving time.  Under Nebraska law, Werner violated both the NWPCA and the NWHA by borrowing from wages promised for miles driven to cover otherwise undercompensated nondriving work, thereby failing to honor its commitment to compensate drivers at their designated mileage rates.

A.     **Werner Has Failed to Show There Is No Genuine Dispute that Drivers Agreed to Be Paid a Lump Sum Per Trip, Precluding Summary Judgment for Werner on Drivers' California Piece-Rate Claims.**

1.     **Under California Law, Employees Who Are Paid on a Piece-Rate Basis Must Receive Separate Compensation for Nonproductive Time.**

In California, employees must be paid for all hours worked.  That means that, where employees are paid at a particular rate for a subset of work time, the employer cannot borrow from those wages to pay for other work that the employee performs—even if, overall, the employee's compensation would average out to the minimum wage or higher.  Instead, the other work must be separately compensated at no less than the minimum wage.  *See, e.g.*, *Armenta*, 135 Cal. App. 4th at 323.

The California Legislature has codified this principle as to piece-rate workers.  Section 226.2 of the Labor Code provides that piece-rate workers "shall be compensated for ... other nonproductive time separate from any piece-rate compensation."  Cal. Lab. Code § 226.2(a)(1). It defines "other nonproductive time" as "time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a piece-rate

842600.13

basis.' *Id.* § 226.2.  That means that, for instance, factory workers paid by the widget must receive separate compensation for work not directly related to producing widgets; technicians paid by the number of telephones installed must receive separate compensation for work not directly related to installing telephones; and so forth.  *See* Cal. Dep't Indus. Rels., AB 1513 - Piece-Rate Compensation, FAQ, *available at* https://www.dir.ca.gov/pieceratebackpayelection/AB_1513_FAQs.htm.

Courts have since clarified this requirement in relevant respects.  *Oman* was not a piece-rate case and did not interpret section 226.2,[1] but in that case, the California Supreme Court formally adopted the rule set out in *Armenta*—that, where a subset of work time is paid at a particular rate, employees must receive separate compensation for other work time.  *Oman*, 9 Cal. 5th at 781.  It further ruled that, in determining whether a compensation system complies with this standard, courts should look to the contract between employer and employee rather than the formula used to calculate compensation.  *Id.* at 782 ("Consistent with general contract interpretation principles, the unit for which pay is promised should be determined based on the 'mutual intent of the parties as it existed at the time of contracting.'") (quoting Cal. Civ. Code § 1636).  *Oman* made clear that interpreting the contract is the essential first step of its analysis, and that employers' self-serving characterizations of the agreement should be met with skepticism.  *Id.* at 790 (Liu, J., concurring) ("Courts should be careful not to allow employers to characterize their contractual commitments in ways that would effectively circumvent the no-borrowing rule.").

---

[1] Werner's summary of the compensation system at issue in *Oman* is oversimplified.  The plaintiffs there were flight attendants who were paid according to a complex scheme that involved four alternative formulas.  Under one of the formulas, the flight attendants earned pay continuously throughout each duty period, at a rate higher than the applicable minimum wage.  *Oman*, 9 Cal. 5th at 785.  The other formulas, some of which applied a higher pay rate to portions of a flight attendant's duty period, were only used instead if they resulted in more pay for a given rotation.  *Id.* at 786.  The system was not piece-rate because the flight attendants were not paid according to the number of units turned out, and the Court expressly noted that it was not interpreting section 226.2 of the Labor Code.  *Id.* at 788 n.8.

In *Ayala*, the Ninth Circuit applied *Oman* to drivers who were paid on a piece-rate basis. Although there was no written contract setting out the terms of drivers' compensation, the employer's written policy explicitly stated that drivers were paid a lump sum per cargo load delivered, and the court likewise found that the named plaintiff had testified that he understood he was paid by the load. *Ayala*, 851 Fed. App'x at 54. On those grounds, the court concluded that the parties had agreed to piece-rate compensation by the cargo load delivered. *Id.*. The Ninth Circuit ruled that this mutual understanding controlled, rather than the formula used to calculate compensation, so it treated drivers' compensation as load-based rather than mileage-based. *Id.* In other words, section 226.2 does not prevent piece-rate workers and their employers from agreeing to the unit of production being compensated.

These cases make clear that the nature of the agreement is dispositive. Thus, courts considering otherwise factually identical cases in which no contract identified a trip or cargo load as the unit of production have ruled that drivers were paid by the mile and must be separately compensated for nondriving work. *See, e.g.*, *Cardenas v. McClane Food Servs., Inc.*, 796 F. Supp. 2d 1246, 1249 (C.D. Cal. 2011); *Quezada v. Con-Way Freight, Inc.*, No. 4:09-cv-03670-JSW, 2012 U.S. Dist. LEXIS 98639, at *3-4 (N.D. Cal. July 11, 2012). The operative question here is whether Werner promised to pay by the mile or by the trip.

### 2. Werner Has Not Established that Drivers Agreed to Be Paid a Lump Sum per Trip; In fact, the Evidence and Testimony Show that Werner Promised to Pay Drivers by the Mile.

In order to prevail on summary judgment, Werner would have to establish there is no genuine dispute that drivers agreed to be paid a lump sum per trip. *See Ayala v. U.S. Xpress Enters., Inc.*, No. 5:16-cv-137-GW-KK, 2020 WL 3071707, at *11 (C.D. Cal. Jun. 9, 2020) (ruling that, prior to 2013, there were disputes of fact regarding whether drivers agreed to be paid by the load or by the mile, precluding summary judgment). It has failed here, both because: (1) its written contracts say nothing about trip-based pay and explicitly say that drivers are paid by the mile; and (2) even if the written contracts were ambiguous, extrinsic evidence, including drivers' testimony that they understood they were paid by the mile and that mileage pay

compensated them for miles driven, raises a genuine dispute of material fact.  Werner spends

several pages arguing that it is lawful in California for an employer to pay drivers by the trip.

ECF No. 354 at 11-16.  But that is only true where the parties actually agreed to this

compensation structure at the time of hiring, as the court found in *Ayala*, 2020 WL 3071707, at

*8 & n.7.  *See also Oman*, 9 Cal. 5th at 782 (the nature of a compensation agreement hinges on

the "mutual intent of the parties as it existed at the time of contracting") (quoting Cal. Civ. Code

§ 1636).  Werner has failed to establish there is no genuine dispute that they did so.

      a.     **The Contract Between Werner and Drivers States that Drivers Are Paid by the *Mile* and Says Nothing About Compensation by the Load or by the Trip.**

The Court need not guess at the compensation agreement between Werner and drivers,

because it is set out in the "Employment Conditions" document that Werner requires all drivers

to sign during orientation.  That document explicitly states that drivers are paid by the mile.  It

tells drivers, "when I am paid by the mile, I will be paid by point-to-point mileage."  ECF No.

355-24 at 1-4.  It further explains: "I understand I will not receive compensation for miles I drive

to return [Driver Management's] equipment, other than those traveled while I am carrying

freight."  *Id.*  The document contains no reference whatsoever to payment by the trip or by the

load.

Werner may argue that this document falls short of promising to pay a certain mileage

rate for time spent driving, as opposed to nondriving work.  However, the second statement

quoted above strongly indicates that mileage pay is for "miles traveled carrying freight"—not,

for example, for "trips completed carrying freight."  In any event, under California law, a

promise to compensate employees based on a particular unit of production in a piece-rate pay

system is inherently a promise to pay that rate for time spent making the unit of production,

whether or not explicitly stated.  For instance, in *Gonzalez v. Downtown LA Motors, LP*,

automotive technicians were paid piece-rate wages in which they accrued "flag hours" by

completing repair jobs and then were paid a rate per flag hour based on their level of experience.

215 Cal. App. 4th 36, 41 (2013).  The technicians contended that they should have received

separate compensation for time spent on other work, including waiting time in between repair jobs.  The employer argued that it had not specifically promised the technicians that they would receive more than the minimum wage for any particular work time.  *Id.* at 50.  The court disagreed, reasoning that a promise to pay a particular rate per unit of production guarantees that rate of pay for time spent on piece-rate work; otherwise, on days when employees are required to perform non-piece-rate work, their piece-rate wages would effectively be reduced.  *Id.*  In enacting section 226.2 of the Labor Code, the Legislature explicitly intended to codify *Gonzalez*. *See Nisei Farmers League v. Lab. & Workforce Dev. Agency*, 30 Cal. App. 5th 997, 1006 (2019). The Ninth Circuit in *Ayala* ruled against the drivers not because the employer had not specifically promised to compensate driving time at a certain rate, but because the piece-rate system to which the parties had agreed identified cargo loads as the unit of production rather than miles.  851 Fed. App'x at 54.  Here, the parties' written contract identifies miles driven as the unit of production.

> **b.**     **That Mileage Pay Is Calculated Based on Direct Distance Rather than Odometer Distance Does Not Alter the Agreement to Pay by the Mile.**

Werner claims without explanation that the provision in the "Employment Conditions" stating that mileage pay is calculated based on direct mileage rather than odometer mileage means that drivers are paid by the trip or by the load.  But this language simply discloses Werner's formula for computing mileage pay; it does not provide that a trip or a load is the unit of production on which drivers' piece-rate pay is based.  *Oman* and *Ayala* instruct that, in determining whether a pay system properly compensated employees for all hours worked, courts should look to the language of the contract—not the formula used to calculate wages.  *See Oman*, 9 Cal. 5th at 781-82; *Ayala*, 851 Fed. App'x at 54.  In accordance with this case law, the Court should decline Werner's invitation to focus on the formula rather than the contract language, which identifies miles driven as the unit of production in Werner's piece-rate system.

Nor is calculation based on direct mileage rather than odometer mileage in any way inconsistent with an agreement to pay drivers by the mile.  Direct mileage and odometer mileage

are simply two alternative measures of distance driven.  Werner's drivers receive piece-rate pay that increases the further they drive—but they are only credited for productive miles.  By analogy, suppose that a company employs factory workers to make widgets.  The contract states that the workers are paid by the widget.  It further states that the workers will not be credited for any widgets that turn out defective, whether or not the defect is the worker's fault.  The latter provision does not fundamentally alter the compensation structure to which the parties are agreeing.  The factory workers are still piece-rate employees paid by the widget, and in California, they are entitled to separate pay for work not directly related to producing widgets, notwithstanding the fact that they are not actually compensated for every single widget they produce.

Werner may argue that the district court in *Ayala* considered the use of point-to-point rather than odometer miles in the compensation formula as one of several factors in concluding that the drivers had agreed to be paid by the load.  However, in *Ayala*, there was no written contract addressing compensation structure, so the court had to examine circumstantial evidence of the parties' intent, such as noncontractual documents, the parties' testimony, and the mechanics of compensation.  *See Ayala v. U.S. Xpress Enterprises, Inc.*, 2020 WL 3071707, at *8 & n.7.  The district court's opinion was also issued before the California Supreme Court's decision in *Oman*, which clarified that the parties' mutual understanding of the compensation agreement at the time of contract formation controls.  9 Cal. 5th at 782.  The Ninth Circuit's opinion, decided after *Oman*, made no mention of calculation based on point-to-point mileage; it focused solely on direct evidence of the parties' understandings of the contract they had entered. *Ayala*, 851 Fed. App'x at 54.  Here, the Court need not look to circumstantial evidence of the nature of the agreement, because the question is resolved by the plain language of the "Employment Conditions"—a written contract of which the Parties do not dispute the validity— which states that drivers are paid by the mile.

Finally, even if the Court believes that Werner's use of direct distances in calculating mileage pay creates some ambiguity about whether the parties agreed to compensation by the

16

mile or by the trip, the "Employment Conditions" document is a form contract, drafted by Werner, that Werner requires drivers to sign as a condition of employment.  Under California law, the document should therefore be interpreted in the manner most favorable to drivers.  *See, e.g.*, *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224 (9th Cir. 2015) ("The rule that any ambiguities caused by the draftsman of the contract must be resolved against that party applies with peculiar force in the case of the contract of adhesion.") (quoting *Neal v. State Farm Ins. Cos.*, 10 Cal. Rptr. 781, 784 (1961)).

> ### c.    The Compensation Agreement Was Not Altered by the Driver Handbook, Load Assignments Sent to Drivers, or Werner's Deposition Testimony Made for this Litigation.

As Werner acknowledges, the "Employment Conditions" document is a valid contract between Werner and each driver.  *See* ECF No. 354 at 5 ¶ 7.  Therefore, it could only have been modified by mutual assent.  *See, e.g.*, *Whorley v. First Westside Bank*, 485 N.W.2d 578, 581 (1992); *Midwest Motor Supply Co. v. Superior Court*, 56 Cal. App. 5th 702, 710 (2020).  Werner proffers three pieces of evidence apart from the written contract—language from the Driver Handbook, testimony regarding the information about load assignments that Werner sends to drivers on their Qualcomm devices over the course of their employment, and the testimony of a Werner representative, made for this litigation, that Werner paid drivers by the trip—but it still fails to meet its burden of showing there is no genuine dispute of fact that drivers agreed to be paid a lump sum per trip.

First, under the doctrine of judicial estoppel, Werner may not rely on language from the Driver Handbook, because the document explicitly states it is not a contract, and Werner has previously relied on this disclaimer to successfully argue that its Handbooks were not evidence of an agreement regarding compensation.  Every version of the Driver Handbook states that it is not a contract, which Werner even acknowledges in this Motion.  ECF Nos. 354 at 20, 355-13 at 2, 355-14 at 2, 355-15 at 2, 355-16 at 2, 355-17 at 2, 355-18 at 2, 355-19 at 2, 355-20 at 2, 355-21 at 2, 355-22 at 2, 355-23 at 2; *see also Acosta v. Tyson Foods*, 800 F.3d 468, 475 (8th Cir.

2015) (document stating it is not a contract must not be treated as contractual).  In *Marion*,

Werner drivers alleged that Werner had breached its promise to calculate their mileage pay based

on odometer distance rather than direct distance.  *Marion* F & R at 4 (Pls.' App. Ex. 2).  In

support, they relied on portions of the Driver Handbook, among other documents.  Werner

pointed to the provision of the Handbook stating that it is not a contract, and on that basis, the

court ruled that the drivers could not rely on any language in the Handbook as evidence of an

agreement regarding wages.  *Id.* at 11.  Accordingly, Werner may not do so here either.  *See,*

*e.g.*, *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) ("[A] party that takes a

certain position in a legal proceeding, 'and succeeds in maintaining that position,' is prohibited

from thereafter assuming a contrary position ....") (quoting *New Hampshire v. Maine*, 532 U.S.

742, 748 (2001)).

      Even if Werner could rely on its Handbooks, those documents still do not state that

drivers are paid by the trip or by the load, but only that drivers' mileage-based and supplemental

pay together are intended to compensate them for all work activities.  *Ayala* ruled that piece-rate

workers can agree to the unit they are being compensated for, not to their piece-rate

compensation's covering nonproductive work time.  *See Ayala*, 851 Fed. App'x at 54; *Ayala*,

2020 WL 3071707, at *10 (section 226.2 requires separate pay for nonproductive time but "does

not prohibit employers and employees from defining the 'piece' of the compensation").  The

latter would allow the protections of section 226.2 of the Labor Code to be waived by private

contract, which California law expressly forbids.  Cal. Lab. Code § 219 ("[N]o provision of this

article [which includes section 226.2] can in any way be contravened or set aside by private

agreement.").  Indeed, Werner understands that, to win its Motion, it must prove that drivers

agreed to be paid by the trip, not just that they agreed their mileage and supplemental

compensation covered all the work they performed.  Otherwise, Werner would not insist that the

documents it cites reference trip-based pay when they plainly do not.

      Werner also argues that drivers could see how many miles were attributable to a load

assignment when they received the assignment, citing the testimony of two Class Members

rather than an actual sample of a load assignment.  But this information does not allow drivers to calculate their total compensation for completing a trip: drivers accrue both mileage pay and supplemental pay over the course of a trip, and the direct distance attributable to a load assignment says nothing about the supplemental pay the driver might accrue.  Nor does Werner contend the load assignments contain any reference to a dollar figure or lump sum per trip completed.  In any event, these load assignments could not have modified the agreement to pay drivers by the mile.  A contract can only be modified by mutual assent, and Werner drivers were forbidden from turning down a load assignment.  *See* ECF No. 355-10 at 1-7 (in document entitled "AGREEMENT" signed by every driver at orientation: "I understand that drivers are required to accept all loads assigned in the 48 contiguous United States and Canada as long as they have sufficient time to safely complete the delivery within the hours of service regulations").

Finally, the testimony of Werner's director of accounting that drivers were paid by the trip cannot modify a written contract, executed at the time of hire, stating that drivers were paid by the mile.  Nor can it be used to interpret the language of an unambiguous contract.  *See, e.g.*, *Sack Bros. v. Tri-Valley Co-op, Inc.*, 616 N.W.2d 786, 791-92 (Neb. 2000); *Brown v. Goldstein*, 34 Cal. App. 5th 418, 432 (2019).  Even if the written contract were ambiguous, the testimony of drivers, discussed below, raises a genuine dispute of fact regarding the nature of the compensation agreement.  The deposition testimony of Werner's director of accounting has "diminished probative value," because it is the self-serving testimony of a Werner official made specifically for this litigation.  *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1216 (N.D. Cal. 2013); *see also Oman*, 9 Cal. 5th at 790 (Liu, J., concurring) ("Courts should be careful not to allow employers to characterize their contractual commitments in ways that would effectively circumvent the no-borrowing rule.").

**3.      Even if the Court Finds that the "Employment Conditions" Are Ambiguous, Drivers' Testimony that They Were Paid by the Mile and Other Extrinsic Evidence at Least Raise a Genuine Dispute of Material Fact.**

If the Court determined that the "Employment Conditions" are ambiguous as to whether drivers were paid by the trip or by the mile, extrinsic evidence regarding the parties' understandings of the contract would be admissible.  If the nonmoving party proffers any extrinsic evidence in favor of its interpretation, the court may not grant summary judgment.  *See, e.g.*, *Duncan v. The McCaffrey Grp., Inc.*, 200 Cal. App. 4th 346, 353 (2011), *overruled on other grounds by Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169 (2013).  Here, drivers testified unequivocally that their agreement with Werner was to be paid by the mile, and that this component of their wages compensated them for miles driven.  This testimony is at least sufficient to raise a genuine dispute of fact regarding the nature of the compensation agreement, precluding summary judgment.  Plaintiff Cagle, for example, testified: "[W]e get paid for miles that Werner says we drove from location to location, and ... we are not paid for all the time that we work that we aren't driving."  Cagle Dep. at 117:3-6 (Wendell Decl. Ex. E); *see also* Surman Dep. at 90:5-10 (Wendell Decl. Ex. F) (testifying to his understanding that mileage pay compensates "[f]or the miles that you travel"); Davis Dep. at 18:8-10 (Wendell Decl. Ex. G) ("[W]hen the wheels aren't turning I was not making any money because I was paid by the mile."); Alesna Dep. at 45:21-22 (Wendell Decl. Ex. H) ("If the wheels is not turning, you're not making money."); Vester Dep. at 45:14-17, 46:6-11, 46:22-47:15 (Wendell Decl. Ex. I) (testifying that he was paid by the mile throughout his employment with Werner and that, from the start of his employment, he understood he would be paid by the mile); Eads Dep. at 12:6 (Wendell Decl. Ex. J) (Werner pays by the mile); Hentz Dep. at 48:4-8 (Wendell Decl. Ex. N) (Werner pays by the mile).

Werner claims that Plaintiff Abarca testified he was paid by the trip, but it takes his testimony out of context.  In the portion of the deposition that Werner cites, Mr. Abarca was being shown his wage statement and asked about his understanding of it.  The wage statement shows Mr. Abarca's "Miles Pay" for the entire pay period, and in a separate section labeled "Trip Detail," it breaks his wages down by the trip completed during the pay period.  *See* Abarca Dep. Ex. 7 (Wendell Decl. Ex. K).  Mr. Abarca merely testified that, while "Miles Pay" refers to the

total amount he was paid by the mile during the pay period, "Trip Total" breaks his total compensation (mileage as well as supplemental pay) down by trip.  Abarca Dep. at 90:3-9, 94:18-20.  Mr. Abarca was neither being asked nor testifying about his understanding of the compensation agreement.

Werner also misrepresents the testimony of two Class Members, neither of whom testified they were paid by the trip or by the load, but only that they were paid for direct mileage rather than odometer mileage.  In fact, Gary Dawson clearly testified that, when he began his employment with Werner, his understanding was that he would be paid by the mile.  Dawson Dep. at 32:23-33:1 (ECF No. 355-4 at 3) ("Q: On both occasions when you started driving for Werner, did you understand that you were going to be paid by the mile? A: Yes.").  Plaintiff Smith similarly testified that he expected to be compensated for miles driven and was disappointed when he realized that direct mileage was often less than odometer mileage.  Smith Dep. at 94:18-20, 104:14-23 (Wendell Decl. Ex. O).  Importantly, these drivers speak in terms of being compensated for the miles they drive, indicating that was their understanding of Werner's pay structure.

Even extrinsic evidence of Werner's understanding of its pay agreement with drivers shows that miles, not trips, were the unit being compensated in Werner's piece-rate system.  Steven Tisinger, Werner's director of accounting, testified that, if the Named Plaintiffs "were qualified drivers, they were paid on a per mile basis."  Tisinger Dep. at 126:3-126:9 (Wendell Decl. Ex. A).  Werner has sworn under oath to the United States Securities and Exchange Commission that most of its drivers are paid by the mile.  Wendell Decl. Ex. M at 3.  In prior litigation, it has responded to an interrogatory with the unqualified statement that, once they have completed training, drivers are "paid by the mile."  Wendell Decl. Ex. B at 9.  And in each of its pleadings in this case, Werner admitted that "qualified drivers are paid varying rates per mile" and said nothing about trip-based pay.  ECF No. 41 ¶ 15; ECF No. 53 ¶ 16; ECF No. 87 ¶ 12; ECF No. 161 ¶ 12.

In sum, the question whether Werner paid drivers by the mile or by the trip is answered by the "Employment Conditions" contract, which states that drivers are paid by the mile and says nothing about a lump sum per trip.  But even if the Court determined that the "Employment Conditions" document is ambiguous, drivers' deposition testimony overwhelmingly shows they understood that they were paid by the mile and that their mileage pay compensated them for miles driven.  At the very least, this testimony and other extrinsic evidence raise a genuine dispute of fact regarding the nature of Werner's compensation agreement with drivers, precluding summary judgment for Werner.

**B.  Werner Has Failed to Show There Is No Genuine Dispute that It Did Not Promise to Pay Drivers at Their Designated Mileage Rate for Miles Driven under the Nebraska Wage Payment and Collection Act.**

Werner's Motion mischaracterizes Plaintiffs' legal theory under the NWPCA, which is not that Werner promised drivers separate compensation for nondriving time, but that it promised drivers mileage pay (at each driver's designated rate) as compensation for miles driven.  Werner failed to meet this commitment by borrowing from drivers' mileage pay to cover nondriving work time, thereby effectively reducing their promised mileage rates.  Thus, Werner's burden on summary judgment was to show there is no genuine dispute that it did not promise to pay drivers by the mile for miles driven.  It failed to do so, because the "Employment Conditions" states that drivers are paid by the mile and that mileage pay compensates them for miles traveled while carrying freight.  ECF No. 355-24 at 1-4.  Even if this document were ambiguous, the driver testimony and other extrinsic evidence discussed in Part IV.A.3 above would at least raise a genuine dispute of fact as to the nature of Werner's promise regarding compensation.

Nebraska has analogous requirements to those imposed under California law (discussed in Part IV.A.1 above).  The NWPCA guarantees employees the right to recover any contractually promised wages.  Neb. Rev. Stat. §§ 48-1229(6), 48-1231(1).  Here, in its "Employment Conditions," Werner promised to pay drivers by the mile at their designated mileage rates.  In addition, the NWHA guarantees compensation at no less than the Nebraska minimum wage for

all hours worked, analyzed on an hour-by-hour basis. Neb. Rev. Stat. § 48-1203(1); *Petrone*, 121 F. Supp. 3d at 872.

In combination, these two statutes forbid Werner's driver pay scheme, because no matter how the compensation system is framed, it cannot comply with both mandates. If Werner borrowed from wages contractually guaranteed for direct miles driven to cover nondriving work time, effectively reducing the mileage rate earned while driving, then it has reneged on its promise to pay drivers at a certain mileage rate for driving. This would violate the NWPCA's requirement that employers pay their workers all wages "previously agreed to" on regular paydays. Neb. Rev. Stat. §§ 48-1229(6), 48-1230(1). If instead Werner actually paid drivers at their mileage rate for time spent driving, then compensation for nondriving time fell short of the minimum wage during times when drivers were not earning supplemental pay, and Werner violated the NWHA by failing to pay at least the minimum wage for all hours worked. Neb. Rev. Stat. § 48-1203(1); *Petrone*, 121 F. Supp. 3d at 872.

In *Oman*, the California Supreme Court explained this dynamic under the California statutes that are analogous to the NWPCA and the NWHA. It reasoned:

> California law ... differs from federal law in that it not only guarantees a minimum wage but also expressly protects employees' right to receive wages promised in a contract or collective bargaining agreement. Specifically, Labor Code section 221 prohibits an employer from paying wages and then recouping some portion of the wages as a kickback or secret deduction; Labor Code section 222 prohibits underpayment of wages established by a collective bargaining agreement; and Labor Code section 223 prohibits underpayment of wages otherwise established by contract. Wage borrowing would violate these statutes by reducing compensation, for the hours from which wages were borrowed, below the contractually agreed-upon level .... Whatever the task or period promised as a basis for compensation, ... an employer must pay no less than the minimum wage for all hours worked. The employer must satisfy this obligation while still keeping any promises it has made to provide particular amounts of compensation for particular tasks or periods of work.

*Oman*, 9 Cal. 5th at 780, 782 (internal citations omitted).  Likewise, Nebraska law both guarantees a minimum wage and expressly protects employees' right to receive wages promised in a contract.

This theory is consistent with the Eighth Circuit's reasoning in *Acosta*.  There, the Eighth Circuit considered whether the NWPCA can be used as a "mechanism for collecting any unpaid wages," including those required under federal law.  *Acosta*, 800 F.3d at 473.  It concluded that the NWPCA only enables employees to recover wages that were contractually agreed to.  *Id.* at 474.  The employees proffered several documents that they contended were agreements to pay them in accordance with federal law, but as to each document, the Eighth Circuit determined either that there was no such promise, or that the document could not be treated as contractual because it expressly stated it was not a contract.  *Id.* at 474-75.  Here, the "Employment Conditions" expressly states that drivers are paid by the mile, and there is no dispute that it is a contract.

Werner cites *Marion* for its contention that its "Employment Conditions" document does not make any promises about how drivers will be paid, but the court in *Marion* was not referring to the same document.  There, several Werner drivers alleged on behalf of a putative class that Werner's practice of using direct distances to calculate mileage pay breached its promise to pay drivers based on odometer mileage.  *Marion* F & R at 4 (Pls.' App. Ex. 2).  One of the documents the plaintiffs relied on was an old version of the "Employment Conditions" document that does not contain the "I am paid by the mile" language that appears on the forms drivers signed during the class period here.  *See* Pls.' Index of Evid. in Supp. of Their Mot. for Class Certification Ex. F at 94-95, *Marion v. Werner Enters.*, No. 8:08-cv-00466-JFB-TDT (D. Neb. Apr. 4, 2009), ECF No. 36 (Pls.' App. Ex. 3).  On class certification, the court considered whether the plaintiffs had class-wide evidence of a promise to calculate mileage pay using odometer miles.  With respect to the "Employment Conditions" form, the court observed that the document did not explain how drivers are paid except at termination.  *Marion* F & R at 11 (Pls.'

App. Ex. 2).  But that observation is inapposite here, because Werner has since added a line to the form that explains that drivers were paid by the mile.  See ECF No. 355-24 at 1-4.

In sum, the "Employment Conditions" promise to pay drivers at their designated mileage rate for driving work, and Werner failed to honor this commitment by borrowing from mileage pay to compensate nondriving work.  Even if the Court thinks that it is ambiguous whether the "Employment Conditions" promise to pay drivers at their designated mileage rate for driving work, Named Plaintiffs and Class Members testified that that was their understanding of the compensation agreement, and Werner has formally stated on numerous occasions that it pays drivers by the mile.  *See supra* Part IV.A.3.  Accordingly, at the very least, there are genuine disputes of material fact about whether Werner promised to pay drivers a rate per mile for driving work, precluding summary judgment.

## V.     CONCLUSION

Werner's motion should be denied as to the first two issues.  Werner has not shown there was no genuine dispute of material fact that drivers agreed they were paid by the load or by the trip.  It also has not shown there was no genuine dispute of material fact that it honored its promise to drivers to compensate them at a particular rate per direct mile driven.

November 12, 2021

Respectfully submitted,

By: */s/ Raymond Wendell*
David Borgen, Of Counsel (CA SBN 099354)
dborgen@gbdhlegal.com
Laura L. Ho (CA SBN 173179)
lho@gbdhlegal.com
Raymond Wendell (CA SBN 298333)
rwendell@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel:  (510) 763-9800
Fax: (510) 835-1417

Justin Swidler, Esq.
Richard S. Swartz. Esq.
SWARTZ SWIDLER, LLC
1101 Kings Hwy. N., Suite 402
Cherry Hill, NJ 08034
Tel:  (856) 685-7420
Fax:(856) 685-7417

Attorneys for *Abarca* Plaintiffs and the Certified Class

*/s/ Grace E. Parasmo*
Grace E. Parasmo (admitted *pro hac vice*)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Liebermann (admitted *pro hac vice*)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd., #505
Los Angeles, CA 90046
Tel:  (646) 509-3913
Fax:  (877) 501-3346

BRIAN VESTER AND JOEL MORALES, Plaintiffs
(*Vester* Action)

*/s/ David Mara*
David Mara (CA SBN 230498)
dmara@maralawfirm.com
Jamie Serb (CA SBN 289601)
jserb@maralawfirm.com
MARA LAW FIRM, PC
2650 Camino Del Rio N., Suite 205
San Diego, CA 92108
Tel:  (619) 234-2833
Fax:  (619) 234-4048

WILLIAM SMITH, Plaintiff (*Smith* Action)

26

*/s/ Gregory Mauro*
James R. Hawkins
James@jameshawkinsaplc.com
Gregory Mauro
Greg@jameshawkinsaplc.com
Michael Calvo
Michael@jameshawkinsaplc.com
James Hawkins APLC
9880 Research Drive Suite 200
Irvine, CA 92618
Tel:  (949) 387-7200
Fax: (949) 387-6676

DANIEL BRYANT, Plaintiff (*Bryant* Action)

842600.13

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that this brief complies with the word limit set forth in NECIVR 7.1(d)(1)(A) because it contains 9,248 words. The undersigned further certifies that the word-count function of Microsoft Word was applied to include all text, including the caption, headings, footnotes, and quotations.

*/s/ Raymond Wendell*
Raymond Wendell

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court for the United States District Court for the District of Nebraska using the CM/ECF system this 12th day of November, 2021, which system sent notification of such filing to counsel of record.

*/s/ Raymond Wendell*
Raymond Wendell

842600.13